GEORGE D. HARMON, Appellant, v. C. F. ENRIGHT et al., Respondents.

Kansas City Court of Appeals, June 20, 1904.

REAL ESTATE BROKER: Commissions: Purchaser: Demurrer to Evidence. On a review of the evidence it is held that there is not a sufficient showing by the plaintiff that the purchaser he produced was ready, willing and able to comply with the contract, nor that the said purchaser's wife, to whom the title was to be conveyed was ready, willing or able so to do; and a demurrer to the evidence was therefore properly sustained.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*John G. Parkinson* for appellant.

If a person employs a real estate agent to sell his property, and in the contract of employment prescribes the terms and conditions on which the broker may act in selling or in securing a purchaser, and if the broker does not himself sell the property, but does find and send

to his employer one who is ready, able and willing to buy the property on the terms and conditions prescribed in the contract, and offers so to do, then the broker has earned his commission and is entitled to it, whether the employer accepts the offer or not. Bailey v. Chapman, 41 Mo. 537; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 553; Gaty v. Foster, 18 Mo. App. 639; Love v. Owens, 31 Mo. App. 501; Hayden v. Grillo, 35 Mo. App. 647; Gerhart v. Peck, 42 Mo. App. 644; Childs v. Critchfield, 66 Mo. App. 422; Real Estate Co. v. Ruhlman, 68 Mo. App. 503; Finley v. Dyer, 79 Mo. App. 604; Duffy v. Mallenkrodt, 81 Mo. App. 449; Finch v. Trust Co., 92 Mo. App. 263.

*T. F. Ryan* and *R. A. Brown* for respondent.

It devolved upon plaintiff to show that he produced a purchaser, willing, ready and able to purchase the premises described in the petition, upon the terms and conditions upon which plaintiff was authorized to sell. This plaintiff wholly failed to do, and the demurrer to the evidence was properly sustained. Hayden v. Grillo, 26 Mo. App. 293; s. c., 35 Mo. App. 647; Love v. Owens, 31 Mo. App. 508; Zeidler v. Walker, 41 Mo. App. 121; Lemon v. Lloyd, 46 Mo. App. 452; Chipley v. Leathe, 60 Mo. App. 15; Wright v. Brown, 68 Mo. App. 583; Gelatt v. Ridge, 117 Mo. 553; McDermott v. Sedgwick, 140 Mo. 180; Fisher v. Realty Co., 159 Mo. 566; O'Brien v. Gilliland, 23 S. W. 244.

SMITH, P. J.—This case will best be understood by reference, first, to the allegations of the plaintiff's petition which are in substance that the defendants were the owners of a small tract of land consisting of about thirty-one acres situate on Lake Contrary, in this State; that plaintiff, a real estate broker, entered into a contract with defendants whereby they agreed to pay plain-

tiff as and for his commission for services in selling said land, the sum of $2,800, providing the plaintiff found a purchaser for said land at a price not less than $30,000, to be paid upon conditions and in manner hereinafter stated. That the defendants agreed, in addition to conveying the property, to secure a lessee for said property for a term of three years, at a price of $4,000 per year, and to have notes executed for and in payment of the total amount due for said lease, which said notes defendants agreed to make good to the satisfaction of the purchaser, it being understood that the lease was to be so drawn as to give to the lessee of said property the right to occupy said property only to the extent which would permit him to sell liquors at any place he might desire upon said property. The defendants further agreed that they would secure a lessee for the boat privileges connected with the above described property, to rent and let for hire boats on the lake adjoining said property, for three years at the rate of $800 per year, and to have said lessee execute notes in the aggregate of $2,400 for the sums due under said lease. And the defendants further agreed to accept said notes amounting to $2,400 as a part of the purchase price of said property, and to give credit therefor upon said purchase price. The purchaser of said property was to be able and willing to pay $10,000 cash, and to execute a first mortgage to secure the payment of the balance due upon said purchase price of $15,600. The plaintiff further states that pursuant to said employment, he procured a purchaser for said land, who agreed to purchase said land upon the terms and conditions above proposed; that said purchaser stood ready and willing to consummate the purchase of said land on said terms and conditions proposed by said defendants. But the said defendants refused to make said sale or to convey said land to said purchaser, although requested so to do, etc.

The truth of these allegations was put in issue by the separate answer of the defendants. The trial court

sustained the several demurrers to the evidence interposed by defendants.

In cases of this kind the law is well settled in this State to the effect that in order to entitle a plaintiff to recover, he is required to show that he produced a purchaser willing, ready and able to purchase the premises described in his petition upon the terms and conditions upon which he was authorized to sell. The correctness of this statement is abundantly supported by the numerous cases cited from our reports in the briefs of counsel. The decisive question raised by the plaintiff's appeal is whether or not the evidence preserved by the bill of exceptions tends to prove that the plaintiff produced a purchaser willing, ready and able to purchase the defendants' thirty-one-acre tract of land upon the terms and conditions upon which he was authorized to sell.

Turning to the evidence, and we do not find that the defendant Martin Connor had any vendible interest in the land described in the petition, but that the defendants Enright and Tillie Connor were the owners of it—the latter being the wife of the defendant Martin Connor. It sufficiently appears from the evidence that the plaintiff did enter into a contract with defendants Enright and Mrs. Connor whereby he was authorized to sell the latter's land for not less than $30,000. The terms of the sale were to be $10,000 cash, $2,600 payable in three years, and $15,000 in five years, and a lease to Martin Connor for three years to be considered as a payment for $2,400. The plaintiff was to be paid $2,800 for making the sale.

The record is wholly barren of any evidence which tended to prove that the plaintiff produced a purchaser who was able to buy the land on the terms provided in the contract authorizing him to sell it. It is true that he produced in the person of a Mr. Snowden a person who while apparently willing to purchase was wholly unable to make the $10,000 cash payment required by

the plaintiff's contract of authorization to sell. According to Mr. Snowden's own testimony his assets consisted of stock in three different telephone companies, and some promissory notes amounting to a few hundred dollars, the total value of all which did not probably exceed five or six thousand dollars; so that it is plain that upon this showing the plaintiff was disentitled to a submission of the case. The lack of proof of this essential fact was fatal to the plaintiff's case.

But the plaintiff contends that by the contract of authorization, defendants not only agreed to find for the purchaser a lessee of the dramshop privilege on the premises for a term of three years at an annual rent of $4,000, but to guarantee the payment of such rent. And it is plaintiff's further contention that if the defendants had procured the lease of the dramshop privilege for the three years' term, and had taken the notes for the $12,000 rent for that term, and after having guaranteed the payment thereof turned them over to Snowden, that Mr. McDonald, a capitalist, would have loaned Snowden on his note, with these guaranteed rent notes as collateral security, the amount required to make the $10,000 cash payment. The plaintiff still further contends that but for the defendants' failure to supplement the meager resources of Snowden with the $12,000 notes to be given for a lease of their own land guaranteed by them, that the latter would have been enabled to raise the $10,000 required to make the cash payment.

One of the difficulties to be met with in sustaining the plaintiff's contention is that there is no evidence tending to prove that the defendants who owned the land agreed with plaintiff that they would either furnish the purchaser a lessee of the dramshop privilege for three years at an annual rent of $4,000, or guarantee the payment thereof. Mr. Reeves, who was called as a witness by the plaintiff, testified that he with another was requested by plaintiff to go with him—plaintiff—to have a statement of an agreement made between de-

fendant Enright and himself and that he accordingly did so; that he made a memorandum of the substance of the agreement so stated by the parties in his hearing, and that something was said about two leases but nothing was said about who *was to obtain the lessees*. This witness further testified that he did not understand that defendant Enright was to guarantee the payment of notes given for the lease of the dramshop privilege; nor that the dramshop lease was to be part payment, or was one of the essentials of the contract, and so did not include it in his memorandum. All the testimony given on either side of the case was in harmony with that given by witness Reeves. The plaintiff's own testimony was prevaricating in its nature. In that given by him at the trial he stated that the defendants were to guarantee the payment of the $12,000 notes for the dramshop privilege so as to make them good; but in his deposition, taken some time before the trial of the case, he deposed to the effect that the defendants did not agree to guarantee the payment of the notes for $12,000 given for the dramshop privilege, but that defendant Martin Connor told him that Enright would do so. He further deposed that he never had any conversation of that kind with defendant Enright.

Leaving out of consideration the prevaricating testimony given by the plaintiff at the trial, there was no evidence adduced which tended to prove that in the contract of employment the defendants or anyone of them agreed to find for any purchaser that the plaintiff might produce a lessee for the dramshop privilege for three years at $4,000 yearly rent, nor was there any evidence that by any agreement in that contract, or by that of any modification of that contract did the defendants, or either of them, bind themselves to guarantee the payment of the $12,000 notes to be given by a lessee of the dramshop privilege. All the testimony given in the case, including that given by the plaintiff in the form of a deposition, clearly shows that there was no such

agreement on the part of the defendants, or any one of them. It may have been that Snowden, the purchaser produced by plaintiff, would have been able to make the $10,000 cash payment on account of the purchase of the land had the defendants guaranteed the payment of the $12,000 notes given by the lessee Dienger to Snowden and his wife for the dramshop privilege, but there is no substantial evidence showing the defendants bound themselves in any contract with plaintiff to do that.

In no view of the case that we have been able to take can we discover that the plaintiff produced a purchaser of the kind required by the rule stated by us at the outset. Snowden was not by himself able to make the cash payment and thus comply with one of the essential conditions of the contract under which the defendants had authorized the sale; nor do we find any evidence of a contract by which defendants bound themselves to make Snowden, or any other purchaser produced by plaintiff, able to make the cash purchase by finding a lessee of the dramshop privilege for three years at an annual rent of $4,000 and guaranteeing the payment of such rent by such lessee.

The case presents still another aspect which, in passing along, may be noticed. It is disclosed by the evidence that the purchaser produced by the plaintiff was not in fact Mr. Snowden, but Mrs. Snowden, his wife. It appears that the defendants were expected by their deed to convey the land to her and not to her husband for it was she who executed to Dienger a lease of the dramshop privilege. It does not appear that she was a woman of any means whatever or that she was any more able to make the $10,000 cash payment to defendants on account of the purchase of the land than her husband. Whether the purchaser produced by the plaintiff was Snowden or his wife or both, the result would be the same since neither nor both were willing, ready and able to make the purchase of plaintiff on the terms authorized by the defendants.

The evidence discloses no case entitling the plaintiff to go to the jury; and accordingly the action of the court sustaining the demurrers must be upheld.    All concur.